FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 9 2022

TAMMY H. DOWNS, CLERK
By:_____KHaupt_____
                    DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BILL HAYNES, INDIVIDUALLY, AND
AS NATURAL FATHER OF DAVID BLAKE
HAYNES, AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF DAVID BLAKE HAYNES,
DECEASED; and AMANDA HAYNES, INDIVIDUALLY,
AND AS DAUGHTER AND HEIR OF
DAVID BLAKE HAYNES, DECEASED                                          PLAINTIFFS

V.                          NO. 4:22-CV-1279-LPR

UNITED STATES OF AMERICA and
JOHN DOE A THROUGH JOHN DOE M                                         DEFENDANTS

## COMPLAINT
**Jury Trial Requested**

Plaintiffs file this their Complaint against Defendant United States of America, Defendants John Doe A through M, and in support thereof would show unto the Court the following:

1. On July 30, 2020, a mid-air collision between two aerial firefighting tanker airplanes (also known as single engine air tankers, or SEATs) occurred while those planes were engaged in dropping fire retardant on or near the Bishop fire in the vicinity of Caliente and Elgin, Nevada, which mid-air collision was proximately caused by the negligence and other fault of personnel of Defendant United States and its agencies Department of Interior, Bureau of Land Management, U.S. Forestry Service and Federal

This case assigned to District Judge Rudofsky
and to Magistrate Judge Harris

Aviation Administration that proximately caused severe personal injuries to and the death of decedent David Blake Haynes.  The said personnel of Defendant United States and its said agencies include without limitation flight directors, air traffic controllers, air tactical supervisors, air attack flight monitors/controllers/personnel, radar operators/controllers and maintenance personnel, pilot training/qualification personnel, and safety personnel involved in the conduct of aerial firefighting of the Bishop fire.  Their negligence includes without limitation the failure to exercise proper care in directing, monitoring and controlling the flights of the subject airplanes to assure separation of the planes so that their flight paths did not cross or otherwise put them at risk of a mid-air collision between them, and otherwise as hereinafter set forth.

        2.      By certified mail sent to Defendant United States' agencies Federal Aviation Administration, the Department of Interior, the Bureau of Land Management, and the U.S. Forestry Service, on December 27, 2021, the Plaintiffs submitted, filed and made administrative claims against the Defendant United States and its said agencies pursuant to the Federal Tort Claims Act.  The receipts/records of the U.S. Postal Service reflect that the Federal Aviation Administration received said certified mail and administrative claims on January 4, 2022, and that the Department of Interior received said certified mail and administrative claims on January 3, 2022, and that the Bureau of Land Management received said certified mail and administrative claims on January 3, 2022, and that the U.S. Forestry Service received said certified mail and administrative

claim on January 3, 2022. Thereafter, the Office of the Solicitor of the United States Department of Interior issued its letter to Plaintiffs dated January 27, 2022, relative to said administrative claims which informed that it would make an administrative determination respecting said claims for all agencies pursuant to the Federal Tort Claims Act. Additionally, in an abundance of caution, an amended administrative claim was submitted, filed and made against the Defendant United States and its said agencies pursuant to the Federal Tort Claims Act by certified mail sent to said agencies on July 15, 2022, for the purpose of informing the agencies that Bill Haynes, father of David Blake Haynes, deceased, had been appointed as successor Personal Representative of the Estate of David Blake Haynes, deceased, by the Circuit Court of Clark County, Arkansas, and in that capacity was continuing the Estate's previously stated claim against the United States and its said agencies relative to the wrongful death of David Blake Haynes in said mid-air collision between the subject airplanes. The receipts/records of the U.S. Postal Service reflect that the Federal Aviation Administration received said certified mail and administrative claims on July 25, 2022, and that the Department of Interior received said certified mail and administrative claims on July 25, 2022, and that the Bureau of Land Management received said certified mail and administrative claims on July 19, 2022, and that the U.S. Forestry Service received said certified mail and administrative claim on July 22, 2022.

3.          It has been more than six (6) months since said administrative claims were filed with and received by said agencies of Defendant United States. Further, by letters issued by the Office of the Solicitor of the Department of Interior in behalf of said agencies and sent by certified mail to the successor personal representative of the estate of decedent David Blake Haynes, and to the claiming survivors of said decedent, on August 9 , 2022, Defendant United States denied said administrative claims against Defendant United States. Plaintiffs have exhausted their administrative remedies precedent and prerequisite to the filing of this Federal Tort Claims Act suit in this Court. *See* 28 U.S.C.A. § 2675.  Further, this Complaint is a "new action" for purposes of Federal Tort Claims Act jurisdiction over this case.

4.          This Court has jurisdiction over Plaintiffs' claims against Defendant United States pursuant to the Federal Tort Claims Act 28 U.S.C. §§ 1346(b) and 2617, *et seq.*, and over Defendants John Doe A through M, *see* paragraph 8 below, pursuant to supplemental jurisdiction under 28 U.S.C. § 1367 and other applicable law.

5.          The decedent David Blake Haynes resided at 114 Northpark Drive, Arkadelphia, Clark County, Arkansas, 71923, on the date of his death on July 30, 2020, and for many years prior thereto.  Plaintiff Bill Haynes, also known as Billy J. Haynes, successor Personal Representative of Estate of David Blake Haynes, deceased, who for many years has and still does reside at 2478 U.S. Highway No. 425 North, Monticello, Drew County, Arkansas, 71655, and Plaintiff Amanda Haynes is the daughter and heir of

the David Blake Haynes, deceased. Venue of this action properly lies in this Court pursuant to 28 U.S.C. § 1402(b) and other applicable law.

6. Defendant United States of America may be served with process of this Court by delivering a copy of the summons and complaint to the U.S. Attorney for the Eastern District of Arkansas, at 425 West Capitol Avenue Suite 500, Little Rock, Arkansas, 72201, and by sending a copy of said summons and complaint by registered or certified mail to the Attorney General of the United States, at 950 Pennsylvania Avenue NW, Washington, D.C., 20530-0001, pursuant to Fed. R. Civ. Proc. 4(i)(1)(A)&(B), and a copy of said summons and complaint may be served on each of said agencies of Defendant United States by registered or certified mail pursuant to Fed. R. Civ. Proc. 4(i)(2), specifically as follows: Federal Aviation Administration, 800 Independence Ave., SW, Washington, DC 20591; Bureau of Land Management, 760 Horizon Drive, Grand Junction, CO 81506, and at P.O. Box 35005, Fort Wainwright, AK 99703; United States Department of the Interior, 1849 C Street, N.W., Washington D.C., 20240; U.S. Forest Service, ASC Claims Branch, 101B Sun Avenue NE, Albuquerque, NM 87109, and at 1400 Independence Ave., SW, Washington, D.C. 20250-0003. Concurrent with the filing of this Complaint, Plaintiffs requested and obtained issuance of summons by the Clerk of this Court, and same together with copy of this Complaint are in the process of being served in accordance with the foregoing.

7. On all relevant occasions the Defendant United States of America and its agencies Federal Aviation Administration, Department of the Interior, Bureau of Land

Management, and U.S. Forestry Service, and the personnel thereof, and Defendants John Doe A through M, were acting in concert with each other and as such were and are agents for each other and liable for each other's actions, conduct, errors and omissions pursuant to the laws of Master/Servant, Principal/Agent, Employer/Employee, Joint Venture/Partnership, and *respondeat superior*. Defendants were acting in the furtherance of each other's business or interests and as such are responsible and liable for each others' actions, conduct and/or omissions. Plaintiffs would further show unto the Court that the Defendants, by and through their actions, conduct, and/or omissions, in joint concert and course of dealings with each other, caused unreasonably dangerous conditions to exist which caused the death of David Blake Haynes and the damages of the Plaintiffs.

8.  Defendants John Doe A through John Doe M are corporations, entities, partnerships, limited partnerships, limited liability corporations, or individuals whose identities, names and addresses are unknown at this time, but who are liable or may be liable to the Plaintiffs relative to the event involved herein and the death of David Blake Haynes by reason of their negligence and other fault in failing to exercise ordinary care in directing, monitoring and controlling the flights of the subject airplanes to assure that their flight paths did not cross or otherwise put them at risk of a mid-air collision between them, and otherwise as stated herein. These Defendants John Doe A through John Doe M include flight directors, air traffic controllers, air tactical supervisors, air attack flight monitors/controllers/personnel, radar operators/controllers and maintenance personnel,

pilot training/qualification personnel, and safety personnel involved in fighting the Bishop fire whose names are presently unknown to Plaintiffs. Plaintiffs will amend their Complaint to substitute these unknown Defendants once the identities, names and addresses of Defendants John Doe A through John Doe M are learned by Plaintiffs.

9. On or about July 30, 2020, Plaintiff's decedent, David Blake Haynes, was an FAA licensed pilot who was aboard and was the actual pilot in command of the 2003 air tractor model AT-802A airplane with FAA registration number N1558M, and on the same date Scott B. Thomas was an FAA licensed pilot who was aboard and was the actual pilot in command of the 2003 air tractor model AT-802A airplane with FAA registration number N8510M. Both of these airplanes and their said pilots were engaged by the Defendant United States and its agencies Department of Interior, Bureau of Land Management and U.S. Forestry Service to provide aerial fire fighting services on a wild land fire (generally referred to as the Bishop fire) in the vicinity of Caliente and Elgin, Nevada, such fire fighting services including dropping fire retardant on and near said wild land fire.

10. On July 30, 2020, at approximately 12:56 Pacific Daylight Time (PDT), these two air tractor model AT-802A airplanes with FAA registration numbers N8510M and N1558W, and piloted by Thomas and Haynes, respectively, departed from the Mesquite, Nevada, Airport and proceeded to the fire retardant drop area designated by Defendant United States and its said agencies and personnel.

11. The pilots had been dispatched to a wild land fire for their drop of fire retardant. Both SEAT airplanes were extending a fire retardant line as part of fire suppression efforts. Pilots Thomas and Haynes completed two uneventful flights in the fire traffic area (FTA) before the mid-air collision of their airplanes. Automatic dependent surveillance-broadcast (ADS-B) data showed that the airplanes departed Mesquite, Nevada, as a flight of two about 12:25 to deploy their third load of fire retardant that day. The ADS-B data showed that Thomas, the pilot flying N8510M, was in lead, and Haynes, the pilot flying N1558W, was in trail, as they flew toward the fire traffic area (FTA).

12. Defendant United States and its agencies Federal Aviation Administration, Department of Interior, Bureau of Land Management and U.S. Forestry Service and their personnel furnished an air attack plane and crew to provide aerial reconnaissance of the fire environment and aircraft traffic control services including directing, monitoring and controlling the flights of the Thomas and Haynes airplanes to assure that their planes flew flight paths that did not cross or otherwise put them at risk of a mid-air collision between them or other fire fighting aircraft in the FTA. The air attack plane flew at approximately 10,000 feet mean sea level (msl) over the FTA. Defendant United States and its said agencies and personnel also provided a lead plane which operated at about 7,500 feet msl in support of the air attack plane by leading the Thomas and Haynes SEATs to the retardant line and by providing flight instructions to Thomas and Haynes. When Thomas

and Haynes, the SEATs, were about 12 nm from the FTA, they checked in with the air attack plane who briefed them and cleared them into the FTA. The pilot of the lead plane of Defendant United States and its said agencies planned to join up with N8510M and N1558W on the downwind leg of the deployment pattern at 6,000 feet msl. The exit procedure that had been briefed for Thomas and Haynes, the pilots of N8510M and N1558W, required them to turn left (to the northeast) and climb to 6,500 feet msl after the drop. The lead plane was required to exit straight ahead.

13.     At 1252:47, Thomas, the pilot of N8510M, started a descent from 7,100 ft msl along with a slight right turn to the north followed by a turn to the west about 15 seconds later. Haynes, the pilot of N1558W, followed the movements of Thomas in aircraft N8510M, from about 1,500 ft behind. About this time, the lead plane began to escort Thomas in N8510M and Haynes in N1558W to their intended drop area. At 1254:37 Thomas in N8510M turned left to a southeast heading and descended from about 6,000 ft msl, with N1558W still about 1,500 ft in trail. Haynes in N1558W began a turn to the southeast a few seconds later and descended from 6,100 ft msl but, upon leveling out, was about 500 ft in trail of and 100 ft below Thomas in N8510M on a heading of 145°. The data showed that both airplanes descended to an altitude of about 400 ft above ground level, when the ADS-B data ceased temporarily (at 1255:23 for Thomas in N8510M and 5 seconds later for Haynes in N1558W). The data for Thomas in N8510M resumed at 1255:38 and showed the airplane in a climb along a southeast heading. The

data for Haynes in N1558W resumed at 1255:45 and showed the airplane in a climb on a similar heading about 70 ft in trail and 125 ft below Thomas in N8510M.

14. The air attack pilot reported that he was simultaneously monitoring a helicopter that was returning from a recon mission and the retardant drops of Thomas and Haynes when the mid-air collision between the Thomas and Haynes planes occurred. The air attack pilot further reported that Thomas' and Haynes' airplanes were in a flight of two behind the lead plane. After the first SEAT airplane (Thomas in N8510M) dropped his retardant load, the second SEAT airplane (Haynes in N1558W) began to encroach on the first SEAT (Thomas in N8510M) airplane. Video recorded by a ground witness captured both airplanes during a portion of the flight, and the video appeared to show Thomas in N8510M descend to a low altitude, deploy fire retardant, and then began a shallow climb. Haynes the air tractor pilot of N1558W deployed fire retardant and then turned left and began a rapid climb.

15. Defendant United States and its said agencies and personnel, including specifically but without limitation its air attack, radar and lead plane personnel, were negligent in failing to exercise proper care and attention to continuous visual and electronic monitoring, directing and controlling the flights of Thomas and Haynes in such a manner to assure separation of their planes and that their flight paths would not cross or otherwise put them at risk of a mid-air collision. Such negligence was exacerbated by said air attack, radar and lead plane personnel's action in directing or permitting Thomas

to drop his retardant load when his plane was so close to and above Haynes' plane which resulted in the opaque red retardant covering the windshield of Haynes' plane, thereby blinding him to the location of Thomas' plane. This negligence proximately resulted in and caused the Thomas and Haynes planes to collide mid-air, resulting in the crash of both planes and the violent deaths of both Thomas and Haynes.

16.     While both Thomas and Haynes were licensed to pilot SEATs in dropping retardant on wild land fires, Defendant United States and its said agencies and personnel were negligent in failing to follow their own requirements that Thomas and Haynes have received recent refresher overrun and emergency procedures training before being engaged in a close proximity 2-plane retardant dropping flight. In fact, there is no record either Thomas or Haynes had received overrun procedures training in the 4 years prior to their mid-air collision, crash and deaths. Further, instead of insisting that both Thomas and Haynes have such prescribed training, the Defendant United States and its said agencies and personnel gave Thomas and Haynes a written "waiver" of said refresher training requirements because same was unavailable due to such things as COVID and a second government shutdown. At bottom, recommended, needed and required refresher training didn't matter to Defendant United States and its agencies and personnel in looking out for the safety of firefighter pilots like Thomas and Haynes, and as a proximate result both Thomas and Haynes died violent, horrible deaths, leaving grieving families behind.

17.  Further, upon being blinded by the retardant on his windshield, Haynes immediately announced on his radio to the personnel of Defendant United States and its agencies, and to others involved in the conduct of this aerial firefighting exercise that he was blinded and was going to "pickle" his load (just drop it all at once) and do a go-around emergency maneuver.  Regarding this, the Defendant United States and its said agencies and personnel, and others involved in the conduct of this 2-plane retardant flight, had negligently failed to brief either Thomas or Haynes on go-around and other emergency procedures to be followed in this flight, which failure is a proximate cause of the mid-air collision between the Thomas and Haynes planes, and the resulting crash and their violent, horrible deaths.

18.  The Defendant United States and its said agencies and personnel, and others involved in the conduct of this 2-plane retardant flight, were negligent for failing to properly brief, instruct, and monitor separation between the two air tractor aircraft, and for failing to have an air traffic controller closely, properly and continuously monitor, control, and maintain separation between the aircraft.

19.  Further, the personnel of the Defendant United States and its said agencies, and others involved in the conduct of this aerial firefighting exercise, were negligent in failing to properly discharge their duties to provide timely air traffic information to the SEAT aircraft, and to provide timely safety alerts to the pilots, and to maintain constant visual and electronic situational awareness, and to maintain proper control over the air

traffic environment, and to avoid risk of collision of the planes under their direction and control, and to prevent confusion to the pilots they were directing. The air traffic controllers employed/engaged by the Defendant United States and its said agencies had a duty to provide timely traffic information to the aircraft; provide for proper separation between the aircraft; to provide proper instructions to the aircraft and pilots, particularly the aircraft flown by David Blake Haynes, once he was unable to see the other aircraft and avoid the aircraft because of the retardant that was dropped on his windshield; to avoid and prevent confusion to the pilots; to notify and advise area pilots, including David Blake Haynes, as to the location of other aircraft operating in the area; to keep an open airspace where pilots are safe; to operate as a team member with a mission to prevent confusion, prevent collisions, and with a team goal of deploying fire retardant; to follow up and answer questions of the aircraft pilots; to maintain adequate sequence and spacing between aircraft to prevent collisions; and to provide warnings, including the location of each aircraft to the other. These controllers and others were negligent and breached the duties listed above and caused the Thomas and Haynes planes to collide mid-air and to crash and the resulting death of both pilots in deadly fires.

20.     At the time of all negligent acts and omissions of the personnel of the Defendant United States and its said agencies, all of such personnel were acting in the course and scope of their employment/engagement with the Defendant United States and its said agencies. Defendant United States and its said agencies, and said others involved

in the conduct of the subject aerial firefighting activties, are vicariously liable for the negligence of their said personnel under the doctrines of Master/Servant, Principal/Agent, Employer/Employee, Joint Venture/Partnership, *respondeat superior*, and 28 U.S.C. § § 1346(b).

21.  As a proximate result of said negligence, the Plaintiffs sustained damages which include conscious pain and suffering, disfigurement, and fright between mid-air collision and crash of David Blake Haynes, medical/funeral expense, lost value and enjoyment of life of David Blake Haynes, and past and future grief, anguish, sorrow and loss of financial and emotional support sustained by the survivors of David Blake Haynes.

22.  Plaintiffs hereby demand a jury trial on all issues.

WHEREFORE, PREMISES CONSIDERED Plaintiffs demand Judgment of, from and against the Defendant United States and the other presently unknown tortfeasor Defendants, jointly and severally, for Plaintiff's damages in the amount of $11,000,000.00; prejudgment interest; post judgment interest; and all costs and litigation expense; and all other proper relief.

Respectfully Submitted,

ATTORNEYS FOR PLAINTIFFS

_____
C. C. "Cliff" Gibson, III

                        Ark. Bar No. 81067
                        GIBSON & KEITH, PLLC
                        119 South Main Street
                        Post Office Drawer 447
                        Monticello, AR   71657
                        Phone:   870/367-2438
                        Email:   ccgiii@gibsonandkeith.com

                        Wayne E. Ferrell, Jr.
                        Mississippi Bar No. 5182
                        Law Offices of Wayne E. Ferrell, Jr., PLLC
                        506 S. President St.
                        Post Office Box 24448
                        Jackson, MS   39225-4448
                        Phone:   601/969-4700
                        Email:   wferrell@airlawonline.com

*(Application for Pro Hac Vice admission being submitted)*

                        Richard L. Kimmel
                        Mississippi Bar No. 3772
                        UPSHAW WILLIAMS BIGGERS & BECKHAM, LLP
                        309 Fulton Street
                        P.O. Drawer 8230
                        Greenwood, MS   38935
                        Phone:   662/455-1613
                        Email: rkimmel@upshawwilliams.com

*(Application for Pro Hac Vice admission being submitted)*